UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: DEFENSE COUNSEL IN 20-cv-92 | CIV. ACTION NO.: 3:22-mc-00039-SDD<br><br>HON. BRIAN A. JACKSON |

**RESPONSE OF DEFENSE COUNSEL
TO SHOW CAUSE ORDER**

NOW INTO COURT, comes counsel for REC MARINE LOGISTICS, LLC, through undersigned counsel, who respectfully submit this memorandum in response to the Court's March 9, 2022, show cause order. In that order, the Court instructed defendant REC Marine Logistics, LLC (hereinafter "REC Marine" or "Defendant"), to show cause within twenty-one days as to why sanctions should not be imposed. For the following reasons, the Court should not impose sanctions against the defendant or its counsel.

I.    BACKGROUND

A.    *Factual and Procedural History*

This case was originally filed by McArthur Griffin in state court. On February 17, 2020, the plaintiff's case was removed to this Court by QBE Insurance (Europe) Limited.

1

On April 29, 2020, REC Marine filed an Answer.[1] At that time, REC Marine and various other defendants (two of which have now been dismissed) were represented by another lawyer. That lawyer did not formally plead a *McCorpen* defense in the original Answer.[2] Apparently, this was an oversight by prior counsel. Less than a month later, on May 19, 2020, prior counsel submitted a Status Conference Report specifically stating that the *McCorpen* defense was being asserted.[3] Plaintiff's counsel received this report.[4]

In September of 2020, Defendant asked current counsel to replace its prior attorney. On October 6, 2020, the Court issued an Order substituting current defense counsel in place of prior counsel.[5] At the time, this case was in a difficult posture, with a pending motion by the plaintiff to compel discovery and for sanctions against REC Marine and its prior counsel for, among other things, failure to respond to discovery and to provide Initial Disclosures.[6] The motion even requested that liability be deemed admitted.[7] The outstanding discovery requests included: (1) thirteen interrogatories and twenty-seven requests for production to REC Marine; (2) thirteen interrogatories and twenty-eight requests for production issued jointly to GOL, LLC,

---

[1] R. Doc. 14
[2] The *McCorpen* defense allows the employer of a seaman to avoid paying maintenance and cure benefits if the seaman knowingly or intentionally concealed or failed to disclose a pre-existing medical condition from the employer during the pre-employment process.
[3] See Status Conference Report of May 19, 2020, attached hereto as Exhibit A.
[4] The Magistrate Judge noted in R. Doc. 94, footnote 37, that although the Status Conference Report was provided to Plaintiff's counsel, it was apparently improperly emailed to the Orders mailbox of the Magistrate Judge by prior defense counsel.
[5] R. Doc. 46
[6] R. Doc. 15
[7] R. Doc. 15

Gulf Offshore Logistics, LLC, and Offshore Transport Services, LLC; (3) seventy-eight requests for admission to REC Marine; (4) seventy-eight requests for admission to GOL; (5) seventy-eight requests for admission to Gulf Offshore; and (6) seventy-eight requests for admission to Offshore Transport. Current counsel worked diligently to remedy the deficiencies of prior counsel, and within nine days, Initial Disclosures of all defendants were produced.[8] Within thirty days, new counsel submitted responses to interrogatories and requests for production on behalf of REC Marine, GOL, Gulf Offshore, and Offshore Transport.[9] By December 2, 2020, the defendants had voluntarily responded to over 300 requests for admission despite Local Civil Rule 36 stating "No party shall serve on any other party more than 25 requests for admission in the aggregate without leave of Court."

At the time current defense counsel was enrolled, it had been nearly a year and a half since Plaintiff filed his original Petition in state court.[10] As a result, new counsel had to review a significant number of documents, respond to the pending motion to compel and for sanctions, and respond to the extensive discovery requests detailed above. Given the press of these matters, current counsel confirmed that prior defense counsel had filed an Answer and requested that their legal assistant download a copy from PACER. However, with the urgent need to address the issues discussed above, they did not conduct an independent analysis of the previously-filed Answer. Rather, counsel relied on the fact that an Answer had been filed by a maritime

---

[8] R. Doc. 47-2.
[9] R. Doc. 47-2, pg. 3.
[10] Plaintiff's state court Petition was filed in April of 2019.

attorney with over 50 years of experience. They were therefore not aware the *McCorpen* defense (which was alleged in a Status Conference Report) had not specifically been pled in the Answer. While the better course of action would have been to independently evaluate the Answer, undersigned counsel did not.

Furthermore, throughout this case Plaintiff issued various forms of discovery directed towards the *McCorpen* defense, which naturally led current counsel to believe the defense had been formally pled. As noted above, Griffin propounded Requests for Admission to REC Marine which were responded to on December 2, 2020. Request for Admission No. 22 states "Admit Plaintiff did not and has not fraudulently concealed a material pre-existing medical condition which is causally related to the injuries Plaintiff alleges were sustained as a result of the Incident."[11] This Request for Admission specifically tracks the three factors of the *McCorpen* defense (*i.e.*, intentional concealment, materiality, and causality). Plaintiff propounded a second set of Requests for Production and Interrogatories on March 2, 2021, which were even more specifically directed to the *McCorpen* defense.[12] Several of these discovery requests state that they "seek information related to Defendants' claimed *McCorpen* defense."[13] On April 12, 2021, Griffin issued further discovery to REC Marine in the form of a Rule 30(b)(6) Notice of Corporate Deposition, with

---

[11] See Request for Admission No. 22, attached hereto as Exhibit B.
[12] See Second Request for Production, attached hereto as Exhibit C
[13] Exhibit C, specifically Requests for Production 1, 2, and 3.

specific topics related to the *McCorpen* defense such as "A description of all pre-hire screening, including medical, of plaintiff, and the results of the screening tests."[14]

On April 28, 2021, Plaintiff filed a motion seeking to compel responses to his discovery requests propounded on March 2, 2021.[15] REC Marine provided its initial responses and objections on the very same day. Within Plaintiff's Motion to Compel, he requested that the Court strike the *McCorpen* defense.[16] Although requesting that the defense be stricken, Plaintiff pointed out that it had not been formally pled. As discussed above, considering the extensive discovery requests issued by the Plaintiff regarding the defense, current defense counsel incorrectly believed it had been formally pled. At least as of April 12, 2021, it appears Plaintiff's counsel was under the same mistaken assumption because he issued a corporate deposition notice which included *McCorpen* related topics.[17] Like defense counsel, Plaintiff's counsel likely noted the *McCorpen* defense was referenced in a Status Conference Report and did not realize until later that the defense was not actually set forth in REC Marine's original Answer. Moreover, the fact that Plaintiff sought to strike the defense in his April 28 Motion to Compel, even though he knew by that time the defense was not contained in REC Marine's Answer, indicates it could reasonably be construed to have been "asserted," even if not formally pled in an Answer.

---

[14] See Plaintiff's Notice of Deposition of Defendant REC Marine Logistics, LLC, attached hereto as Exhibit D

[15] R. Doc. 63

[16] *Id.*

[17] Exhibit D

On May 5, 2021, Magistrate Judge Erin Wilder-Doomes held a telephone conference to discuss Plaintiff's Motion to Compel. She noted in an Order summarizing the conference that Defendants had already responded to Plaintiff's discovery requests at the time the conference was held.[18] Although some of the information requested by Plaintiff was produced, the Defendants at the time (including REC Marine) objected to certain portions of the discovery, particularly the requests which sought the medical records and information of all current and former employees of four separate Defendants for an unlimited time. Judge Wilder-Doomes felt the parties had not satisfied their "meet and confer" obligations to determine whether their remaining disputes could be resolved. She ordered that "The Motion will be terminated because discovery responses were provided and because there is no legal basis to strike a defense that has not yet been, and may never be, pled."[19] The Magistrate Judge ordered the parties to engage in an adequate discovery conference to resolve their issues. The Court gave the plaintiff until May 12, 2021, to file a new motion to compel if such was necessary.[20] Ultimately, the parties were not able to resolve their dispute regarding the portions of Plaintiff's discovery to which the Defendants objected. Accordingly, Plaintiff filed an Amended Motion to Compel on May 12, 2021.

At the time of the May 5, 2021 telephone conference, no depositions had been taken in this case. On June 24, 2021, Judge Wilder-Doomes held a hearing via Zoom

---

[18] R. Doc. 65
[19] *Id.* at p. 2
[20] *Id.* at p. 3

on Plaintiff's Amended Motion to Compel. Between these two dates several important developments took place. Shortly after the telephone conference on May 5, 2021, the Plaintiff's deposition was taken by defense counsel. On May 12, 2021, Plaintiff's counsel took the corporate deposition of REC Marine. On June 1, 2021, the parties filed a Joint Motion for Continuance and Amended Rule 16 Scheduling Order, on the grounds that additional time was needed to conduct discovery and prepare the case for trial.[21] The Motion was granted on June 3, 2021.[22]

At the hearing on June 24, 2021, defense counsel informed the Court that REC Marine would be filing a Motion for Leave to Amend its Answer to include the *McCorpen* defense.[23] Judge Wilder-Doomes denied Plaintiff's Amended Motion to Compel, without prejudice to re-urging the motion if REC Marine was granted leave to amend its Answer.[24] The Magistrate Judge instructed the parties to confer and discuss both the scope of Plaintiff's discovery on the *McCorpen* defense and the Defendants' anticipated motion for leave to amend, to determine whether these issues could be resolved without court intervention.[25] As later noted by Judge Wilder-Doomes: "The parties were ordered to attempt to amicably resolve any issues regarding the discovery requests, as well as the issues raised in this Motion, *i.e.*, whether Plaintiff would agree to the amendment and [REC Marine] would agree to provide additional, relevant *McCorpen* discovery."[26] The Court also

---

[21] R. Doc. 68
[22] R. Doc. 70
[23] See transcript of June 24, 2021 hearing, attached hereto as Exhibit E, pg. 5
[24] R. Doc. 75
[25] R. Doc. 75, pgs. 4-5
[26] R. Doc. 94, pg. 11, footnote 57

provided the parties with guidance regarding narrowing the scope of Plaintiff's

discovery requests. In that regard, Judge Wilder-Doomes stated:

> The scope of the discovery requests should be narrowed, as the
> current requests seek the pre-employment disclosure of all pre-
> existing injuries of all employees in all job positions employed by all
> [Vessel] Defendants, which is overly broad. Discovery should
> initially be tailored to the pre-employment disclosures of *REC*
> *Marine employees* in *similar job positions* with *similar previous*
> *injuries* as Plaintiff.[27]

Several hours after the hearing on June 24, 2021, defense counsel sent an

email to counsel for the Plaintiff stating, in part, "In follow-up to the hearing this

morning, please let me know if you will consent to the court granting leave for REC

Marine to file an amended Answer asserting the *McCorpen* defense."[28] In exchange,

defense counsel proposed supplementing REC Marine's responses to Plaintiff's

*McCorpen* discovery within certain parameters as discussed at the hearing.[29]

Having not heard back from Plaintiff's counsel, defense counsel sent a follow-up

email on June 26, 2021.[30] Plaintiff's counsel responded on June 29, 2021, stating

that he would oppose any request for leave to file an amended Answer.[31] Plaintiff's

counsel also disagreed with the scope of discovery proposed by defense counsel,

making several counter-proposals.[32] Defense counsel replied on July 1, 2021,

expressing the basis for the proposed limitations on the scope of *McCorpen*-related

---

[27] R. Doc. 75, pg. 4 (emphasis in original)
[28] See chain of e-mail correspondence, attached hereto as Exhibit F.
[29] Exhibit F
[30] *Id.*
[31] *Id.*
[32] *Id.*

discovery.[33] Defense counsel concluded his response by stating "The Judge's recent Order requires us to meet and confer in an effort to resolve our differences. It doesn't seem we are going to reach common ground. However, I intend to comply with the Judge's instructions. I also intend to file our Motion for Leave to Amend by Friday. Please let me know what time you have tomorrow to discuss by phone. I will make myself available after hours if that is all that works for you."[34] Although defense counsel does not recall the specific date, he believes that counsel for the Plaintiff did subsequently call to discuss the issues regarding the scope of discovery. However, the parties were unable to fully resolve their issues.

B.   *Defendant's Motion for Leave to Amend and Subsequent Court Ordered Sanction*

On July 7, 2021, REC Marine filed a Motion for Leave to Amend Answer, in part to assert the *McCorpen* defense.[35] Six months later, on January 14, 2022, the Court issued its Ruling and Order granting the Motion, finding that there was good cause for the amendments, and that the requirements of Federal Rules of Civil Procedure 15 and 16 were satisfied.[36] In the same Order, Judge Wilder-Doomes sanctioned defense counsel $1,000 under the Court's inherent authority, "for attorney's fees incurred due to unnecessary delays caused by [defense] counsel's failure to clearly acknowledge an intent to assert the *McCorpen* defense once on

---

[33] *Id.*
[34] *Id.*
[35] R. Doc. 77.
[36] R. Doc. 94, pgs. 6-13

notice [through Plaintiff's April 28 Motion to Compel] that they had failed to do so."[37]

On January 28, 2022, REC Marine filed an Objection to the Magistrate Judge's Ruling and Order, arguing that the imposition of sanctions should be reversed because neither the Magistrate Judge's Order nor the record evidence indicated defense counsel acted in bad faith in seeking leave to amend REC Marine's Answer.[38] After a hearing, this Court issued a Ruling and Order on March 9, 2022, that reversed the portion of Judge Wilder Doomes' Order which imposed a sanction of $1,000, and noted that the Order did not make a finding of bad faith.[39] However, the Court stated that "cause for sanctions against Defendants and/or Defense Counsel may exist based on various acts and omissions resulting in Defendants' failure to timely assert the *McCorpen* defense."[40] Defendants were ordered to show cause withing 21 days why sanctions should not be imposed.[41] The Court requested that five separate areas be addressed, all of which are discussed fully below.

II. ARGUMENT

A. *This Court Should Not Impose Sanctions Pursuant to Federal Rule of Civil Procedure Rule 11*

The Court first asked Defendants to show cause why sanctions should not be imposed under Federal Rule of Civil Procedure 11 "based on Defendants' June 10,

---

[37] R. Doc. 94, pgs. 12-15
[38] R. Doc. 104 and 104-1
[39] R. Doc. 127
[40] R. Doc. 127, pg. 2
[41] R. Doc. 127, pg. 3

2021 Opposition to Plaintiff's Amended Motion to Compel Discovery Responses, wherein Defendants did not disclose their failure to assert a *McCorpen* defense and repeatedly challenged Plaintiff's 'claim' that the *McCorpen* defense 'has not actually been asserted,' despite current defense counsel having learned no later than April 28, 2021 'that prior counsel for the Vessel Defendants did not formally assert the *McCorpen* defense in the Vessel Defendants' original Answer.'" It appears the Court's concern is whether REC Marine was attempting to claim in the Opposition that they had formally pled a *McCorpen* defense when in fact they knew as of April 28, 2021, when Plaintiff filed his initial Motion to Compel, that they had not.

The Court's concern, and Defendant's response to that concern, turns on a subtle but meaningful distinction. Neither defense counsel nor their client has ever claimed that REC Marine <u>formally</u> asserted or pled the *McCorpen* defense <u>in Defendants' original Answer</u>. This would be an impossible argument to make, as the defense is clearly absent from the original Answer. This was acknowledged long before the Defendant filed the aforementioned Opposition. As the Magistrate Judge confirmed in her May 5, 2021 Order summarizing a telephone conference held to discuss plaintiff's original Motion to Compel and to Strike the *McCorpen* Defense,[42] "there is no legal basis to strike a defense that has not yet been, and may never be, pled."[43] No party disputed that the *McCorpen* defense was not pleaded in the Defendants' original Answer.

---

[42] R. Doc. 63
[43] R. Doc. 65

Given the above, defense counsel would never try to argue the *McCorpen* defense had been formally pled in an Answer. What counsel has argued, and continues to maintain, is that the *McCorpen* defense was in fact asserted as far back as May 19, 2020, when prior defense counsel submitted a Status Conference Report stating that the *McCorpen* defense was a bar to plaintiff's recovery of maintenance and cure.[44] By all accounts, Plaintiff himself believed the defense had been "asserted," as he issued extensive discovery addressing the defense and even felt the need to ask the Court to strike the defense in his April 28 Motion to Compel.

Thus the statements in the above-referenced Opposition challenging Plaintiff's claim that the *McCorpen* defense had not been asserted were solely made to convey that, while the defense was not formally pled in the original Answer, it had nevertheless been asserted and all parties, including Plaintiff, had proceeded under the assumption that the *McCorpen* defense was an issue in this case.

B.    *This Court Should Not Impose Sanctions Pursuant to Federal Rule of Civil Procedure Rule 16(f)*

The Court next asks Defendants to address why sanctions should not be imposed under Federal Rule of Civil Procedure 16(f) based on Defendants' failure to seek leave to file an amended Answer asserting the *McCorpen* defense until more than 9 months after current defense counsel's enrollment, more than 7 months after the expiration of the November 18, 2020 deadline to amend pleadings, and more than two months after April 28, 2021, when defense counsel learned that prior counsel did not formally assert the *McCorpen* defense in the original Answer.

---

[44] Exhibit A

Rule 16(f) allows a court to "issue any just orders" if a party or its attorney "fails to obey a scheduling or other pretrial order."[45] The Court correctly notes that the original Scheduling Order issued in this matter established a deadline of November 18, 2020 to amend pleadings.[46] This was less than a month and a half after current defense counsel enrolled in the case, and approximately five and half months before the first deposition was taken.

As previously discussed, the reason current counsel did not seek leave to assert the *McCorpen* defense prior to April 28, 2021, is because they did not realize the defense had not been formally pled. The Defendants' original Answer was filed by prior counsel, an experienced maritime attorney. Upon enrollment in the case, current counsel confirmed that an Answer was filed, but did not independently analyze the Answer to determine whether all possibly available affirmative defenses had been pled. Rather, under the difficult and unusual circumstances with which they were presented, counsel focused on responding to extensive outstanding discovery requests (which included discovery regarding the *McCorpen* defense), and responding to Plaintiff's Motion to Compel and for sanctions against prior counsel. Given the previous assertion of the *McCorpen* defense in a Status Conference Report and the fact that plaintiff issued numerous forms of discovery specifically targeted at the *McCorpen* defense prior to April 28, 2021, it is understandable why current defense counsel would believe the *McCorpen* defense had been formally pled.

---

[45] Fed. R. Civ. P. 16(f)(1)(C)
[46] R. Doc. 41

With respect to the delay in seeking leave to assert the *McCorpen* defense after Plaintiff filed his Motion to Compel and to Strike the *McCorpen* Defense on April 28, 2021, Defendants note that this was the first time they became aware the defense had not been formally pled. At that point, no depositions had taken place in the case. As discussed above, the Plaintiff was deposed on May 5, 2021, after the telephone conference held by the Magistrate Judge to discuss Plaintiff's Motion to Compel. The corporate deposition of the Defendants took place on May 12, 2021. As this Court is likely aware, two of the most important categories of evidence related to a *McCorpen* defense are the testimony of the plaintiff (regarding whether he intentionally concealed pre-existing conditions or injuries) and the corporate deposition of the Jones Act employer (regarding whether the plaintiff's failure to disclose a prior injury or condition was material to the decision to hire him).

Considering the state of the case at the time counsel learned the *McCorpen* defense had not actually been asserted in the original Answer, combined with simultaneously being faced with wide ranging discovery from the Plaintiff related to the defense, current defense counsel felt there was an obligation to make sure the *McCorpen* defense could be properly supported before seeking leave to assert it in an amended Answer. Under the unique circumstances, defense counsel also felt it was appropriate to seriously evaluate the likelihood of prevailing on the *McCorpen* defense and balance that against the burden and significant expense which could potentially be imposed on counsel's clients in having to respond to Plaintiff's incredibly broad discovery which sought the medical records and information of all

current and former employees of each of the four Vessel Defendants for an unlimited period of time.

After time to carefully consider these issues and speak to client representatives, defense counsel advised the Court during the hearing on June 24, 2021 (43 days after only the second deposition in the case) that leave would be sought to file an amended Answer. Only three weeks prior, on June 3, 2021, the Court had granted a continuance of the trial and discovery deadlines.[47] After subsequent efforts to negotiate whether plaintiff would voluntarily allow leave to amend and the scope of *McCorpen* discovery if leave was granted, which the parties were instructed to do by the Magistrate Judge, Defendants formally sought leave to amend their Answer.

C. *This Court Should Not Impose Sanctions Pursuant to Federal Rule of Civil Procedure 26(g) and/or Federal Rule of Civil Procedure 37(a)*

This Court's Order also requests that Defendants show cause why sanctions should not be imposed under Federal Rules of Civil Procedure 26(g) and/or 37(a) based on Defendants' April 28, 2021 responses to Plaintiff's Second Requests for Production and Interrogatories "wherein Defendants did not disclose their failure to assert a *McCorpen* defense," in light of fact that current counsel learned through Plaintiff's April 28, 2021 Motion to Compel that prior defense counsel did not formally assert the defense in Defendants' original Answer.[48] In responding to the issue raised by the Court, current defense counsel has gone back through their file

---

[47] R. Doc. 70.
[48] R. Doc. 127, pgs. 3-4

to assess the timing of when Plaintiff's Motion to Compel was filed in relation to when Defendants' discovery responses were provided, given that such occurred on the same day. In doing so, counsel notes that written responses had been fully prepared as of 3:44 p.m. on April 28, 2021, at which time counsel forwarded the responses to his paralegal and asked that she assemble two documents that were referenced as attachments thereto.[49] Counsel's paralegal did so, and provided a link to defense counsel with the attachments at 4:10 p.m.[50] According to the Court's email notification system, Plaintiff's Motion to Compel was filed at 5:11 p.m., and the notification reached defense counsel's inbox at 5:12 p.m.[51] Eleven minutes later, at 5:23 p.m., defense counsel responded to his paralegal's previous email, indicating that the attachments to the discovery responses were "good to go," and asked that his paralegal place counsel's e-signature on the discovery responses before forwarding to Plaintiff's counsel.[52] Within that eleven-minute time frame, defense counsel does not recall having read the Motion to Compel filed by Plaintiff, nor does counsel believe they would have had time to do so. Counsel's paralegal sent the discovery responses to Plaintiff's counsel at 5:38 p.m.[53]

As illustrated by the above, responses to Plaintiff's Second Requests for Production and Interrogatories were prepared prior to the filing of Plaintiff's Motion to Compel (wherein he requested that the *McCorpen* defense be stricken because it

---

[49] *See* internal email correspondence, attached hereto as Exhibit G
[50] Exhibit G
[51] *See* email notification, attached hereto as Exhibit H
[52] Exhibit G
[53] *See* email from defense counsel's paralegal to Plaintiff's counsel, attached hereto as Exhibit I

was not formally pled). Moreover, in the matter of minutes between when Plaintiff's Motion to Compel was filed and when discovery responses were finalized and produced, defense counsel do not recall having reviewed the Motion to Compel, which would explain why "Defendants did not disclose their failure to assert a *McCorpen* defense," in the referenced discovery responses.

Even if defense counsel had reviewed Plaintiff's Motion prior to responding to the referenced discovery, counsel submits that sanctions would still not be appropriate simply because they didn't state within the discovery responses that they did not formally plead the *McCorpen* defense in their original Answer. While the failure to formally plead the defense would have given Defendants justification for not responding on relevance grounds, Defendants submit that nothing in Rule 26 or Rule 37 precludes them from making a good faith effort to respond to discovery about a defense which all parties assumed up until that point was an issue in the case. In fact, in finding there was good cause to allow REC Marine to amend its Answer to assert the *McCorpen* defense, the Magistrate Judge specifically highlighted that the "Defendants' responses to *McCorpen* discovery shows good faith."[54]

D. *Defense Counsel Did Not Violate the Louisiana Rules of Professional Conduct*

This Court's March 9, 2022, order suggests that defense counsel may have violated various Louisiana Rules of Professional Conduct in the course of litigating the *Griffin v. REC Marine Logistics* matter. The order contends that defense

---

[54] R. Doc. 94, pg. 13

counsel initially failed to prepare and assert defendants' *McCorpen* defense thoroughly and diligently. Further, this Court's order contends that defense counsel subsequently failed to disclose to the Court and to opposing counsel that the *McCorpen* defense had not been asserted despite learning of this fact no later than April 28, 2021. For the following reasons, defense counsel did not violate the Louisiana Rules of Professional Conduct.

1. *Defense Counsel Competently and Diligently Defended REC Marine*

The most fundamental obligation that a lawyer owes to a client under the applicable standards of care and conduct is the duty to handle the client's matter competently. *See generally* Restatement (Third) of the Law Governing Lawyers § 16(2) (2000). Indeed, Louisiana Rule of Professional Conduct 1.1 provides as follows:

> (a) A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

La. Rules of Prof'l Conduct r. 1.1.[55] In addition, Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." *Id.* r. 1.3. Here, defense counsel's conduct in initially preparing and representing REC Marine satisfied Rules 1.1 and 1.3.

---

[55] A comment to the corresponding ABA Model Rule provides that "[c]ompetent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation. The required attention and preparation are determined in part by what is at stake; major litigation and complex transactions ordinarily require more extensive treatment than matters of lesser complexity and consequence." ABA Model Rules of Prof'l Conduct r. 1.1, cmt. 5.

On October 6, 2020, current defense counsel formally enrolled as counsel of record for REC Marine. Thereafter, defense counsel conducted a preliminary assessment of the matter to determine the urgency in responding to certain motions and the extent of the work associated with such action. To this end, defense counsel confirmed that the predecessor defense counsel had filed an answer but did not independently analyze the answer to determine whether all possibly available affirmative defenses had been pled.

Defense counsel held a good faith belief that the *McCorpen* defense had been pled. Defense counsel reviewed the May 19, 2020 Status Conference Report specifically stating that the *McCorpen* defense was being asserted. Defense counsel also reviewed and responded to the voluminous discovery requests propounded by the plaintiff, some of which specifically targeted the *McCorpen* defense. Likewise, it appears that counsel for the plaintiff also reasonably believed that defense counsel had asserted the *McCorpen* defense. Indeed, the plaintiff issued extensive discovery and filed motions targeted to the *McCorpen* defense.

Defense counsel acknowledges that, in retrospect, the most prudent action would have been to independently confirm that the predecessor (and experienced maritime) lawyer had specifically pled the *McCorpen* defense. However, defense counsel's litigation misstep does not violate Rules 1.1 or 1.3 of the Rules of Professional Conduct. This is especially true considering that, after inheriting the *Griffin* matter, defense counsel devoted substantial resources to organizing, evaluating, and analyzing the voluminous case materials. Defense counsel also

devoted considerable resources to responding to the plaintiff's motion to compel discovery and for sanctions against REC Marine pending before this Court. Finally, defense counsel ultimately discovered—albeit belatedly—that the *McCorpen* defense had not formally been pled and took the steps to ensure that the defense was viable before informing the Court of its intention to assert the defense. For these reasons, defense counsel's conduct did not violate Rules 1.1 and 1.3 of the Rules of Professional Conduct.

      E.    *Subsequent Disclosure of the McCorpen Defense*

The Rules of Professional Conduct impose obligations on lawyers while representing a client with respect to their interactions with the tribunal and opposing counsel. *See* La. Rules of Prof'l Conduct, r. 3.3; *id.*, r 3.4. Lawyers must be candid toward the tribunal and must not lie or allow a court to be misled. *Id.*, r. 3.3. As to opposing counsel, "[f]air competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like." *See* ABA Model Rule 3.4, cmt. 1. Here, defense counsel's conduct in informing the Court of its intention to formally raise the *McCorpen* defense meets these standards.

Defense counsel first learned on April 28, 2021, that predecessor counsel had not raised the *McCorpen* defense in the answer to the complaint. Thereafter, defense counsel believed it had the obligation to confirm that the *McCorpen* defense could be properly supported before requesting leave to assert it in an amended

answer. To this end, defense counsel deposed the plaintiff and participated in the corporate deposition of REC Marine.[56]

Defense counsel also had to consider the expense of responding to the plaintiff's discovery requests targeted at obtaining information related to the *McCorpen* defense, and consult with their clients regarding the potentially significant burden and expense in responding to plaintiff's very broad discovery requests (which were later narrowed by the Magistrate Judge). Thereafter, on June 24, 2021, defense counsel advised this Court and opposing counsel that it would seek leave to file an amended answer to raise the *McCorpen* defense.

Defense counsel never lied to this Court or allowed this Court to be misled about its intention of asserting the *McCorpen* defense. *See* La. Rules of Prof'l Conduct, r. 3.3. Defense counsel never engaged with opposing counsel in an unfair or deceitful manner. *See* La. Rules of Prof'l Conduct, r. 3.4 Defense counsel did not "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." *See* La. Rules of Prof'l Conduct, 8.4(c). On the contrary, defense counsel realized that the defense had not been formally pled, competently and diligently investigated whether evidence existed to fully support the defense, and then candidly informed this Court of its intention to file an amended answer. Defense counsel made its witnesses available to the plaintiff for depositions, responded to plaintiff's discovery

---

[56] The two of the most important categories of evidence related to a *McCorpen* defense are the testimony of the plaintiff (regarding whether he intentionally concealed pre-existing conditions or injuries) and the corporate deposition of the Jones Act employer (regarding whether the plaintiff's failure to disclose a prior injury or condition was material to the decision to hire him)

requests, and candidly informed opposing counsel of its intention to file an amended answer.

Defense counsel is unaware of any disciplinary rule which would *require* defense counsel to immediately inform the Court or opposing counsel that it had not asserted the *McCorpen* defense. The Rules require lawyers to ensure that there is a non-frivolous basis for asserting a defense or controverting an issue in the litigation. *See* La. Rules of Prof'l Conduct, r. 3.1. Defense counsel performed its due diligence and thoroughly investigated the issue prior to alerting the Court of its intention to assert the *McCorpen* defense. For the foregoing reasons, defense counsel did not violate the Rules of Professional Conduct.

F.    *The Court should not issue sanctions pursuant to its inherent authority*

Defendants previously briefed in their Objection to the Magistrate Judge's Ruling and Order why the Court should not issue sanctions under its inherent authority.[57] Federal courts have undisputed, inherent power to regulate practice in cases pending before them.[58] In exercising its inherent authority, a court can sanction a party for abuse of judicial processes.[59] However, "[b]ecause of the potency of inherent powers and the limited control of their exercise, they must be used with great restraint and caution."[60] "The threshold for the use of the inherent power

---

[57] R. Doc. 104-1

[58] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991).

[59] *See Chambers*, 501 U.S. at 43–44, 111 S.Ct. at 2132–33.

[60] *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996).

sanction is high."[61] Such powers may be exercised only if essential to preserve the authority of the Court…"[62] To sanction a party, the court must make a specific finding that the sanction is in response to (1) the willful disobedience of a court order or (2) actions taken in bad faith, vexatiously, wantonly, or for oppressive reasons.[63] The U.S. Fifth Circuit has made clear that "in order to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in bad faith."[64]

The Magistrate Judge did not find bad faith when she issued the $1,000 sanction against defense counsel. Defense counsel further submits that nothing about the circumstances and actions discussed at length in this Response indicate that current defense counsel or their clients acted with any ill-intent or in bad faith. As such, the Court should not sanction Defendants or their attorneys under the Court's inherent authority.

III.    CONCLUSION

For the foregoing reasons, this Court should not impose sanctions on counsel for REC Marine Logistics, LLC.

---

[61] *Natural Gas Pipeline*, 86 F.3d at 467
[62] *Id.* (emphasis added).
[63] *See Id.* at 44–45, 111 S.Ct. at 2133; *Dawson v. United States*, 68 F.3d 886, 895 (5th Cir.1995).
[64] *Elliot v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995).

Respectfully submitted,

Dane S. Ciolino, La. Bar No. 19311
Clare S. Roubion, La. Bar No. 36042
LOUISIANA LEGAL ETHICS, LLC
18 Farnham Place
Metairie, LA 70005
(504) 975-3263
dane@daneciolino.com
clareroubion@lalegalethics.com

Counsel of Record for REC Marine
Logistics

## CERTIFICATE OF SERVICE

I, Dane S. Ciolino, hereby certify by signing above that I filed this document through the ECF/CMF filing system on Wednesday, March 30, 2022.